# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

BRANDI MARIE GREGORY,

      Plaintiff,

      v.

KILOLO KIJAKAZI,[1] Acting
Commissioner of Social Security,

      Defendant.

CIVIL ACTION NO. 3:20-cv-01290

(SAPORITO, M.J.)

## MEMORANDUM

In this matter, the plaintiff, Brandi Marie Gregory, seeks judicial review of the final decision of the Commissioner of Social Security denying her claim for supplemental security income, pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). The matter has been referred to the undersigned United States magistrate judge on consent of the parties, pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. She has been automatically substituted in place of the original defendant, Andrew Saul. *See* Fed. R. Civ. P. 25(d); *see also* 42 U.S.C. § 405(g) (action survives regardless of any change in the person occupying the office of Commissioner of Social Security). The caption in this case is amended to reflect this change.

## I.    BACKGROUND

On April 30, 2018, Gregory protectively filed a claim for supplemental security income, asserting a disability onset date of April 1, 2018. Her claim was initially denied by state agency reviewers on July 24, 2018. The plaintiff then requested an administrative hearing.

A hearing was subsequently held on July 11, 2019, before an administrative law judge, Jarrod Tranguch (the "ALJ"). In addition to the plaintiff herself, the ALJ received testimony from an impartial vocational expert, Patricia L. Chilleri. The plaintiff was represented by counsel at the hearing.

On July 31, 2019, the ALJ denied Gregory's application for benefits in a written decision. The ALJ followed the familiar five-step sequential evaluation process in determining that Gregory was not disabled under the Social Security Act. *See generally Myers v. Berryhill*, 373 F. Supp. 3d 528, 534 (M.D. Pa. 2019) (describing the five-step sequential evaluation process). At step one, the ALJ found that Gregory had not engaged in substantial gainful activity since her application date. At step two, the ALJ found that Gregory had the severe impairments of: post-traumatic stress disorder ("PTSD"), anxiety disorder, mood disorder, and attention-

deficit hyperactivity disorder ("ADHD").

At step three, the ALJ found that Gregory did not have an impairment or combination of impairments that meets or medically equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ considered Gregory's limitations in four broad functional areas as a result of her mental disorders, finding mild limitations in her ability to understand, remember, or apply information and her ability to adapt or manage oneself, and finding moderate limitations in her ability to interact with others and her ability to concentrate, persist, or maintain pace. *See generally* 20 C.F.R. § 416.920a(c) (explaining functional limitation rating process for mental impairments); 20 C.F.R. pt. 404, subpt. P, app.1, § 12.00(E) (explaining the four areas of mental functioning); *id.* § 12.00(F) (explaining process for using paragraph B criteria to evaluate mental impairments).

Between steps three and four of the sequential-evaluation process, the ALJ assessed Gregory's residual functional capacity ("RFC"). *See generally Myers*, 373 F. Supp. 3d at 534 n.4 (defining RFC). After evaluating the relevant evidence of record, the ALJ found that Gregory had the RFC to perform full range of all exertional levels of work as

defined in 20 C.F.R. § 404.967, with the following non-exertional limitations:

> [S]he is limited to performing jobs that would take no more than one month of training to learn with a specific vocational preparation level of two or less, which are generally classified as unskilled. The claimant is limited to jobs that would be considered "low stress," involving only occasional, simple[] decision making, and only occasional changes in the work duties and work setting. Additionally, the claimant is limited to occasional contact with co-workers and supervisors, and only rare or incidental contact with customers or the public.

(Tr. 18.)

In making these factual findings regarding Gregory's RFC, the ALJ considered her symptoms and the extent to which they could reasonably be accepted as consistent with the objective medical evidence and other evidence of record. *See generally* 20 C.F.R. § 416.929; Soc. Sec. Ruling 16-3p, 2017 WL 5180304 (revised Oct. 25, 2017). The ALJ also considered and articulated how persuasive he found the medical opinions and prior administrative medical findings of record. *See generally* 20 C.F.R. § 416.920c.

At step four, the ALJ found that Gregory had no past relevant work. At step five, the ALJ concluded that Gregory was capable of

performing other jobs that exist in significant numbers in the national economy. Based on her age, education, work experience, and RFC, and based on testimony by the vocational expert, the ALJ concluded that Gregory was capable of performing the requirements of representative occupations such as packer/packager (hand packager), DOT # 920.587-018, order picker, DOT # 922.687-058, and laundry worker, DOT # 369.687-018. Based on this finding, the ALJ concluded that Gregory was not disabled for Social Security purposes.

The plaintiff sought further administrative review of her claims by the Appeals Council, but her request was denied on June 9, 2020, making the ALJ's July 2019 decision the final decision of the Commissioner subject to judicial review by this court.

The plaintiff timely filed her complaint in this court on July 28, 2020. The Commissioner has filed an answer to the complaint, together with a certified copy of the administrative record. Both parties have filed their briefs, and this matter is now ripe for decision.

## II.   DISCUSSION

Under the Social Security Act, the question before this court is not whether the claimant is disabled, but whether the Commissioner's

finding that he or she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See generally* 42 U.S.C. § 405(g)(sentence five); *id.* § 1383(c)(3); *Myers*, 373 F. Supp. 3d at 533 (describing standard of judicial review for social security disability insurance benefits and supplemental security income administrative decisions).

Gregory asserts on appeal that the ALJ's decision is not supported by substantial evidence because: (1) the ALJ failed to properly evaluate prior administrative findings, including the medical opinions of a state agency psychological consultant; (2) the ALJ failed to properly evaluate a medical opinion by an examining neuropsychologist; (3) the ALJ failed to properly consider the clinical findings of a treating psychotherapist; and (4) the ALJ failed to properly consider subjective evidence regarding Gregory's symptoms, including statements and testimony by Gregory and her grandmother.[2]

---

[2] The plaintiff's brief articulated two conclusory, extremely general claims of error: (1) the ALJ erred in finding that Gregory did not meet listings 12.04, 12.06, 12.11, or 12.15; and (2) the RFC assigned to Gregory by the ALJ is not based on substantial evidence. Although not clearly articulated by plaintiff's counsel, a close reading of the plaintiff's brief reveals that both of these very generalized grievances rest on the same four specific errors we have articulated above.

## A. Evaluation of Medical Opinions

The plaintiff contends that the ALJ's decision is not supported by substantial evidence because the ALJ erred in his evaluation of conflicting medical opinions and prior administrative findings presented in the administrative proceedings below. As a preface, we note the well-established principle that, in evaluating the medical opinion evidence of record, an "ALJ is not only entitled, but required to choose between" conflicting medical opinions. *Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981). "[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent [an ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). Moreover, "[i]n the process of reviewing the record for substantial evidence, we may not 'weigh the evidence or substitute [our own] conclusions for those of the fact-finder.'" *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)). Ultimately, to reverse the ALJ's findings and decision, "we must find that the evidence not only *supports* [a contrary] conclusion, but *compels* it." *Immigration & Naturalization Serv. v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992); *see also Smith v. Chater*, 99 F.3d

780, 782 & N.3 (6th Cir. 1996) (citing *Elias-Zacarias* in the context of social security disability benefits); *Hert v. Barnhart*, 234 F. Supp. 2d 832, 837 (N.D. Ill. 2002) ("The court may reverse the Commissioner's decision only if the evidence 'compels' reversal, not merely because the evidence supports a contrary decision.") (citing *Elias-Zacarias*).

Here, the plaintiff originally filed her administrative claim for benefits in April 2018. Thus, a relatively new regulatory framework governing the evaluation of medical opinion evidence applies to this case.

"The new regulations have been described as a 'paradigm shift' in the way medical opinions are evaluated." *Knittle v. Kijakazi*, Civil No. 1:20-CV-00945, 2021 WL 5918706, at *4 (M.D. Pa. Dec. 15, 2021). "Prior to March 2017, ALJs were required to follow regulations which defined medical opinions narrowly and created a hierarchy of medical source opinions with treating sources at the apex of this hierarchy." *Densberger v. Saul*, Civil No. 1:20-CV-772, 2021 WL 1172982, at *7 (M.D. Pa. Mar. 29, 2021). Under this prior regulatory scheme, the Social Security Administration "followed the 'treating physician rule,' which required the agency to give controlling weight to a treating source's opinion, so long as it was 'well-supported by medically acceptable clinical and laboratory

diagnostic techniques' and not 'inconsistent with the other substantial evidence' in the record." *Michelle K. v. Comm'r of Soc. Sec.*, 527 F. Supp. 3d 476, 481 (W.D. Pa. 2021). However, the regulations governing the evaluation of medical evidence were amended and the treating physician rule was eliminated effective March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5,844 (Jan. 18, 2017); *see also Densberger*, 202 WL 1172982, at *7–*8; *Michelle K.*, 527 F. Supp. 3d at 481. "The range of opinions that ALJs were enjoined to consider were broadened substantially and the approach to evaluating opinions was changed from a hierarchical form of review to a more holistic analysis." *Densberger*, 2021 WL 1172982, at *7.

Under these new regulations, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 416.920c(a). "Rather than assigning weight to medical opinions, [an ALJ] will articulate 'how persuasive' he or she finds the medical opinions." *Knittle*, 2021 WL 5918706, at *4; *see also* 20 C.F.R. § 416.920c(b). If a medical source provides one or more medical opinions, the agency will consider those

medical opinions from that medical source together using the following factors: "(1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treatment relationship, the frequency of examinations, purpose and extent of the treatment relationship, and the examining relationship; (4) specialization; and (5) any other factors that 'tend to support or contradict a medical opinion or prior administrative medical finding.'" *Michelle K.*, 527 F. Supp. 3d at 481; *see also* 20 C.F.R. § 416.920c(a); *Densberger*, 2021 WL 1172982, at *8. Under the new regulations, "[t]he two 'most important factors for determining the persuasiveness of medical opinions are consistency and supportability,' which are the 'same factors' that formed the foundation of the treating source rule." *Densberger*, 2021 WL 1172982, at *8; *see also* 20 C.F.R. § 416.920c(b)(2); *Michelle K.*, 527 F. Supp. 3d at 481; *compare* 20 C.F.R. § 416.920c(c)(1) (supportability), and *id.* § 416.920c(c)(2) (consistency), *with id.* § 416.927(c)(3) (supportability), and *id.* § 416.927(c)(4) (consistency).[3] An ALJ is specifically required to address

---

[3] With respect to supportability, the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more

*(continued on next page)*

these two factors in his or her decision. *See* 20 C.F.R. § 416.920c(b)(2); *see also Densberger*, 2021 1172982, at *8; *Michelle K.*, 527 F. Supp. 3d at 482. "The ALJ may—but is not required to—explain how he considered the remaining factors." *Michelle K.*, 527 F. Supp. 3d at 482; *see also* 20 C.F.R. § 416.920c(b)(2); *Densberger*, 2021 WL 1172982, at *8. "However, when the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered [the remaining] factors . . . ." *Densberger*, 2021 WL 1172982, at *8; *see also* 20 C.F.R. § 416.920c(b)(3); *Michelle K.*, 527 F. Supp. 3d at 482.

### 1. *Prior Administrative Findings*

The ALJ considered the prior administrative findings in this case, finding them to be "persuasive." The ALJ found the findings and opinions by a state agency psychological consultant contained therein to be "consistent with the evidence." (Tr. 21.)

---

persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(1). With respect to consistency, the new regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 416.920c(c)(2).

The prior administrative findings included the opinions of a state agency psychological consultant, Frank M. Mrykalo, Ph.D. Based on his review of Gregory's medical records, Dr. Mrykalo considered whether Gregory's medically determinable impairments met or medically equaled the severity of the listed impairments, finding that Gregory failed to satisfy the "B" criteria of the listings.[4] Dr. Mrykalo found that Gregory had no more than moderate limitations in any of the four areas of mental functioning: he found that she had moderate limitations in the area of interacting with others and the area of concentrating, persisting, or maintaining pace, and she had mild limitations in the area of understanding, remembering, or applying information and the area of adapting or managing oneself. Dr. Mrykalo evaluated Gregory's residual functional capacity as well, finding that Gregory was subject to moderate limitations in her ability to understand, remember, and carry out detailed instructions, her ability to maintain attention and concentration for extended periods, her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms,

---

[4] Dr. Mrykalo also found that she failed to satisfy the "C" criteria, but the plaintiff does not challenge that assessment.

her ability to perform at a consistent pace without an unreasonable number and length of rest periods, her ability to interact appropriately with the general public, and her ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, with no other limitations noted. Ultimately, Dr. Mrykalo opined that Gregory was "fairly capable of: making simple decisions; coping with minor stressors; follow[ing] simple 1-2 step task directives; perform[ing] simple routine type tasks; [and] comprehend[ing] and retain[ing] simple task instructions." (Tr. 64–68.)

Upon review of Dr. Mrykalo's opinions, the ALJ found "the opinion of Dr. Mrykalo persuasive, as it is consistent with the evidence including the treatment records from [treating psychotherapist Grace] Penman and the medication management records. It also takes into consideration difficulties with concentration as alleged by the claimant." (Tr. 21.) Throughout his discussion of the severity of Gregory's impairments and her residual functional capacity, the ALJ expressly discussed and cited the treatment records that supported and were consistent with these assessments by Dr. Mrykalo. (*See* Tr. 16–21.)

Accordingly, we find the ALJ's evaluation of the prior

administrative findings, including the medical opinions of the state agency psychological consultant, Dr. Myrkalo, is supported by substantial evidence and was reached based upon a correct application of the relevant law.

## 2. *Examining Neuropsychologist Opinion*

On July 9, 2018, Gregory was seen and examined by a neuropsychologist, Randy Lee Fulton, Psy.D. On examination, Dr. Fulton observed that Gregory was alert and oriented to person, place, and time, her dress was appropriate and grooming or hygiene was good, her behavior was pleasant and cooperative, and her speech was spontaneous, fluent, and within normal limits, her gait and posture were normal, and she exhibited appropriate social comportment. Dr. Fulton noted that Gregory was nervous about the appointment initially, but her mood was more at ease as rapport was established. Dr. Fulton observed that Gregory exhibited fair insight and logical, goal-directed thought process, albeit with some tendency to lose her train of thought in conversation. In addition to his clinical interview of Gregory, he considered various self-reported rating scales completed by Gregory, which indicated "high levels of inattention, hyperactivity, and 'Sluggish Cognitive Tempo' symptoms"

of ADHD, "high levels of reported ADHD symptoms, both within inattentive and hyperactive domains," and "depression and anxiety . . . both in severe ranges." Based on the foregoing, Dr. Fulton confirmed Gregory's prior diagnosis of ADHD (mixed inattentive and hyperactive subtype) with comorbid depression with anxiety. He noted that Gregory's "clinical picture" was also complicated by a "history of trauma and subsequent PTSD symptoms." Dr. Fulton opined that "the level at which she is reporting both ADHD symptoms as well as depression and anxiety would certainly interfere with her ability to pursue and maintain employment." He recommended continued treatment of ADHD symptoms, discussion of stimulant and non-stimulant treatment options with her medical providers, and therapy for mood and PTSD symptoms. Dr. Fulton did not provide an opinion with respect to the severity of Gregory's limitations in the four areas of mental functioning considered at step three of the agency's five-step sequential evaluation process, nor an opinion with respect to any functional limitations. (Tr. 399–402.)[5]

Upon review, the ALJ found that this opinion was not persuasive.

---

[5] A second copy of this same treatment note is found in the administrative record, but the second copy is incomplete—it is missing two of four pages. (Tr. 326–27.)

In particular, the ALJ noted that Dr. Fulton's opinion did not "address any specific functional limitations related to her conditions," and that it "appears to rely primarily upon what the claimant has reported, not on any clinical examinations or objective evidence." (Tr. 21.) Previously, the ALJ had separately relied on several of Fulton's clinical observations in evaluating the severity of her impairments at step three. (*See* Tr. 16–18.)

Here, we find that the ALJ properly disregarded Dr. Fulton's opinion that Gregory's symptoms of ADHD, depression, and anxiety would interfere with her ability to pursue and maintain employment. Such an opinion by a medical source is "inherently neither valuable nor persuasive" under the applicable regulations, which expressly and exclusively reserve to the Commissioner (or the ALJ as her designee) the ultimate issue of whether the claimant is "disabled, . . . able to work, or able to perform regular or continuing work." *See* 20 C.F.R. § 416.920b(c)(3); *see also Knittle*, 2021 WL 5918706, at *6. With respect to the remainder of Dr. Fulton's treatment findings, while Dr. Fulton recorded many clinical observations to substantiate Gregory's severe impairments of PTSD, anxiety disorder, mood disorder, and ADHD, those observations are entirely consistent with Dr. Mrykalo's initial findings

and the ALJ's ultimate findings concerning the severity of Gregory's impairments and her functional limitations.

Accordingly, we find the ALJ's evaluation of the opinion of examining neuropsychologist Dr. Fulton is supported by substantial evidence and was reached based upon a correct application of the relevant law.

## B. Consideration of Treating Psychotherapist Observations

The plaintiff contends that the ALJ's decision is not supported by substantial evidence because the ALJ "simply ignored" treatment notes recorded by Gregory's treating psychotherapist, Grace A. Penman, M.Ed., M.S.W., L.C.S.W.

Gregory was seen and treated by Penman on a regular basis, seeing her approximately once every two weeks for several years. Despite the plaintiff's characterization, it is difficult to see how the ALJ can be said to have "simply ignored" Penman's treatment observations. Penman and her treatment notes are cited or discussed throughout the ALJ's decision.

The plaintiff contends that Penman's treatment notes include various clinical observations that should have supported a step-three determination that Gregory's impairments met or medically equaled the

severity of listed impairments 12.04 (depressive, bipolar, and related disorders), 12.06 (anxiety and obsessive-compulsive disorders), 12.11 (neurodevelopmental disorders), or 12.15 (trauma- and stressor-related disorders) because she satisfied the paragraph "B" criteria. All four listings include the same paragraph "B" criteria: extreme limitation in one area of mental functioning or marked limitation in two areas of mental functioning. *See* 20 C.F.R. pt. 404, subpt. P, app.1, §§ 12.04(B), 12.06(B), 12.11(B), 12.15(B). *See generally* 20 C.F.R. § 416.920a(c) (explaining functional limitation rating process for mental impairments); 20 C.F.R. pt. 404, subpt. P, app.1, § 12.00(E) (explaining the four areas of mental functioning); *id.* § 12.00(F) (explaining process for using paragraph B criteria to evaluate mental impairments). But while Ms. Penman recorded many clinical observations to substantiate Gregory's severe impairments of PTSD, anxiety disorder, mood disorder, and ADHD, those observations are entirely consistent with Dr. Mrykalo's initial findings and the ALJ's ultimate findings concerning the severity of Gregory's impairments and her functional limitations. In particular, we note that Penman regularly recorded findings with respect to Gregory's mood or affect and her daily patterns of behavior, but she never

recorded any impairment characterized as more than a *moderate* limitation. The plaintiff's suggestion that Penman's treatment notes should *compel* a decision that she suffers extreme or marked limitations in any of the four areas of mental functioning is entirely unsupported.

Accordingly, we find the ALJ's consideration of the medical evidence from treating psychotherapist Penman is supported by substantial evidence and was reached based upon a correct application of the relevant law.

## C. Subjective Evidence of the Plaintiff's Symptoms

The plaintiff contends that the ALJ's decision is not supported by substantial evidence because the ALJ erred in her evaluation of Gregory's symptoms, including statements and testimony by Gregory and her grandmother. *See generally* 20 C.F.R. § 416.902(i) ("Symptoms means your own description of your physical or mental impairment."). In particular, the plaintiff contends that the ALJ "ignored" lay statements by Gregory and her grandmother reporting that Gregory suffers "panic attacks" or "anxiety attacks" that prevent her from performing activities of daily living, and which should support a finding that Gregory suffers from marked or extreme limitations in all four areas of mental

functioning.

Standing alone, a claimant's allegation of pain or other symptoms is not enough to establish an impairment or disability. 20 C.F.R. § 416.929(a); *Prokopick v. Comm'r of Soc. Sec.*, 272 Fed. App'x 196, 199 (3d Cir. 2008) ("Under the regulations, an ALJ may not base a finding of disability solely on a claimant's statements about disabling pain . . . ."). "An ALJ is permitted to reject a claimant's subjective testimony as long as he or she provides sufficient reasons for doing so." *Prokopick*, 272 Fed. App'x at 199 (citing *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 433 (3d Cir. 1999)).

When evaluating a claimant's subjective allegations of pain or other symptoms, an ALJ utilizes a two-step process. Soc. Sec. Ruling 16-3p, 2017 WL 5180304, at *2 (revised Oct. 25, 2017). First, the ALJ must determine whether there is a medically determinable impairment that could reasonably be expected to produce the symptoms alleged. *Id.* at *3; *see also* 20 C.F.R. § 416.929(b). A claimant cannot be found to be "disabled based on alleged symptoms alone." Soc. Sec. Ruling 16-3p, 2017 WL 5180304, at *4.

Once the ALJ has found that a medically determinable impairment

has been established, the ALJ must then evaluate the claimant's allegations about the intensity, persistence, or functionally limiting effects of his or her symptoms against the evidence of record. *Id.* This evaluation requires the ALJ to consider "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.*

But the plaintiff's suggestion that the ALJ "ignored" the non-medical statements and testimony provided by herself and her grandmother is simply unfounded. It is clear from the ALJ's decision that he considered the claimant's own statements about the intensity, persistence, and limiting effects of symptoms, including her testimony at the administrative hearing and her self-reported activities of daily living, as well as the statements provided by her grandmother. He explicitly and extensively discussed his consideration of this evidence in his decision. (*See* Tr. 19–20.) The ALJ considered this evidence together with the medical evidence, medical opinions, and prior administrative findings in the record, which we have already discussed above. (Tr. 20–23.) Based on

all this evidence, the ALJ concluded that Gregory's "statements about the intensity, persistence, and limiting effects of her symptoms . . . are not fully consistent with the medical evidence of record." (Tr. 20.) The ALJ noted that, "[a]lthough the claimant indicated that she is unable to work due to her impairments, her mental status examinations, as discussed above, were generally within normal limits with no significant functional limitations noted." (*Id.*) Nevertheless, the ALJ expressly took Gregory's subjective complaints about her symptoms into account in finding that her ability to work was subject to certain non-exertional limitations, as set forth in the RFC determination. (*Id.*)

Although Gregory quibbles with the outcome of the ALJ's analysis of the evidence of record, it is clear that the ALJ properly evaluated the claimant's symptoms in accordance with the applicable regulations, and that the ALJ reasonably concluded that, notwithstanding the claimant's subjective complaints of pain and other symptoms, the evidence as a whole did not support physical or mental limitations in excess of those set forth in the ALJ's RFC determination. While this same evidence might have also reasonably supported the adoption of substantially greater limitations, it did not compel such a finding.

Accordingly, we find the ALJ's evaluation of the subjective of the plaintiff's symptoms is supported by substantial evidence and was reached based upon a correct application of the relevant law.

## III.   CONCLUSION

Based on the foregoing, we conclude that the Commissioner's finding that Gregory was not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. Accordingly, the Commissioner's decision denying disability benefits is **AFFIRMED**.

An appropriate Order follows.


Dated: March **24**_____, 2022

JOSEPH F. SAPORITO, JR.
United States Magistrate Judge